UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PATRICIA EDGHILL,

       Plaintiff,

                                   Case No. 2:20-cv-461

   v.                            Magistrate Judge Norah McCann King

ANDREW SAUL,
Commissioner of Social Security,

       Defendant.

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Patricia Edghill for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court affirms the Commissioner's decision.

## I.    PROCEDURAL HISTORY

On October 28, 2016, Plaintiff filed her application for benefits, alleging that she has been disabled since October 18, 2016. R. 57, 176–77. Plaintiff's application was denied, R. 79–83, and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 88–90. Administrative Law Judge Kenneth Theurer ("ALJ") held a hearing on October 24, 2018, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational

expert. R. 28–56. In a decision dated November 2, 2018, the ALJ concluded that Plaintiff was

not disabled within the meaning of the Social Security Act from October 18, 2016, the alleged

disability onset date, through the date of that decision. R. 16–23. That decision became the final

decision of the Commissioner of Social Security when the Appeals Council declined review on

November 27, 2019. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g).

ECF No. 1. Plaintiff consented to disposition of the matter by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No.

12.[1] On June 10, 2020, the case was reassigned to the undersigned. ECF No. 16. The matter is

now ripe for disposition.

## II.   LEGAL STANDARD

### A.   Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the

authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d

Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence "does not mean a

large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565

(1988) (citation and internal quotations omitted); *see K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*,

No. 17-2309 , 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).  Substantial evidence is "less

than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc.*

---

[1]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

*Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *see K.K.*, 2018 WL 1509091, at *4.

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of*

*Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see*

*K.K.*, 2018 WL 1509091, at *4.  The ALJ decision thus must be set aside if it "did not take into

account the entire record or failed to resolve an evidentiary conflict."  *Schonewolf*, 972 F. Supp.

at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the

record and explanation of findings to permit meaningful review."  *Jones v. Barnhart*, 364 F.3d

501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir.

2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an

expression of the evidence s/he considered which supports the result, but also some indication of

the evidence which was rejected."  *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication

of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a

comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice."  *Cotter*, 650 F.2d at 482.  Absent such articulation, the Court

"cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As

the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the
> weight [s/]he has given to obviously probative exhibits, to say that [the] decision is
> supported by substantial evidence approaches an abdication of the court's duty to
> scrutinize the record as a whole to determine whether the conclusions reached are
> rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the

5

Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. R. 18. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between October 18, 2016, her alleged disability onset date, and the date of the administrative decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: a back impairment, a neck impairment, a left elbow impairment, migraines, and chronic sinusitis. *Id*. The ALJ also found that Plaintiff's diagnosed diabetes, hypertension, and obesity were not severe impairments. R. 19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19−20.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 20−22. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as claims clerk. R. 23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 18, 2016, her alleged disability onset date, through the date of the decision. *Id*.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 14. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the

entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 15.

## IV.     RELEVANT MEDICAL EVIDENCE

### A.     Richard Weiskopf, M.D.

On December 9, 2016, Richard A. Weiskopf, M.D., conducted a consultative examination of Plaintiff. R. 428−32. He noted that Plaintiff is able to cook, clean, do laundry, go shopping, shower and dress herself, watch television, listen to the radio, read, paint ceramics, and do jigsaw puzzles. R. 429. Upon examination, Dr. Weiskopf noted that Plaintiff was obese with a normal gait; she was able to walk on her heels and toes without difficulty and without assistive devices. R. 430. Plaintiff's stance was normal; she needed no help getting on and off the examination table and was able to rise from a chair without difficulty. *Id*. Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. *Id*. Her thoracic spine showed no scoliosis, kyphosis, or abnormality. *Id*. Plaintiff's lumbar spine showed flexion to 30 degrees, extension to only 5 degrees, full lateral flexion bilaterally, and full rotary movement bilaterally. *Id*. Plaintiff could perform straight leg raises to 30 degrees bilaterally; Lasegue's sign was negative bilaterally. *Id*. Plaintiff had full range of motion of her shoulders, elbows, forearms, and wrists. *Id*. The flexion of the hips was to 90 degrees, flexion in both knees was to 108 degrees; she had full range of motion of her knees and ankles bilaterally. R. 430−31. Dr. Weiskopf noted no evident subluxations, contractures, ankylosis, or thickening. R. 431. Although Plaintiff's left knee was tender, there was no redness, heat, swelling, or effusion; joints were stable and there was no evidence of muscle atrophy. *Id*. Strength was 5/5 in the upper and lower extremities. *Id*. Plaintiff's hand and finger dexterity was intact with grip strength 5/5 bilaterally. *Id*.

Dr. Weiskopf diagnosed chronic low back pain, migraine headaches, diabetes type 2, hypothyroidism, hypertension, obesity, and chronic knee pains, probably osteoarthritis. *Id.* Plaintiff's prognosis was stable. *Id.* "She has no limitations on sitting and standing. She has moderate limitations on walking. She has moderate to severe limitations in bending, lifting, climbing, and carrying. She has good use of her hands regarding strength and fine motor activities." *Id.*

### B.    Jack E. Kundin, M.D.

On January 2, 2017, Jack E. Kundin, M.D., conducted an initial review of Plaintiff's medical record, including Dr. Weiskopf's report of his consultative examination. R. 68−78. According to Dr. Kundin, the record documented the medically determinable impairments of migraines, spine disorders, diabetes mellitus, essential hypertension, all disorders of thyroid gland (except malignant neoplasm), obesity, and major joint dysfunction; however, these impairments neither met nor equaled Listing 1.02, which addresses major joint dysfunction, Listing 1.04, which addresses spine disorders, or Listing 11.02, which addresses epilepsy. R. 73. Considering her activities of daily living, medication treatment, and treatment other than medication, Dr. Kundin also opined that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence alone. R. 73−74. According to Dr. Kundin, Plaintiff could perform light exertion except that she could perform postural activities only occasionally; he also opined that Plaintiff should avoid concentrated exposure to environmental hazards such as machinery and heights because of her history of migraine headaches and her medications. R. 72, 75−77. Dr. Kundin concluded that Plaintiff was not disabled. R. 76−78.

## V.    DISCUSSION

### A.    RFC

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination because the ALJ "failed to account for all of the effects of her migraines in the RFC finding[.]" *Plaintiff's Brief*, ECF No. 14, pp. 10–17. This Court disagrees.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the administrative law judge who is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but [which] is opposed by other evidence in the record," but "[t]his discretion is not unfettered— the ALJ cannot reject evidence of a limitation for an unsupported reason;" "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

Here, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to occasionally lift/carry ten pounds; sit for six hours in a workday; and stand or walk for two hours in a workday. The claimant can never climb ladders/ropes/scaffolds, but she can occasionally perform all other postural

activities. She should avoid work at unprotected heights or in conjunction with dangerous machinery. Finally, she should avoid concentrated exposure to smoke, dust and respiratory irritants.

R. 20. In making this determination, the ALJ detailed years of record evidence, including, *inter alia*, normal range of motion in the back and neck with no history of surgery, a generally conservative course of treatment, and no evidence of muscle spasms in the lumbar and cervical spines; MRIs of the lumbar and cervical spine that showed no more than slight or mild issues; an EMG/nerve conduction study that showed no evidence of lumbar radiculopathy, large fiber peripheral polyneuropathy, or peripheral nerve entrapment; full range of motion in the left elbow despite an issue in 2001 and full strength in her left upper extremity with no deficits in either of the upper extremities; an MRI of the brain and an EEG that were normal; the fact that, although Plaintiff reported frequent migraine headaches for a number of years, she was able to work full-time for years and did not produce evidence of worsening headaches; sinus surgery prior to the relevant period with a good result; Plaintiff ;s ability to live alone, prepare simple meals, clean, do laundry, drive, shop in stores, and go out alone; Dr. Weiskopf's assessment that Plaintiff had no limitation in her ability to sit and stand, moderate limitation in her ability to walk, and moderate-to-severe limitation in her ability to bend, lift, climb, and carry. R. 21–22. In the view of this Court, this record contains substantial evidence to support the ALJ's RFC determination. *See Zirnsak*, 777 F.3d at 615; *Rutherford*, 399 F.3d at 554; *Plummer*, 186 F.3d at 429.

However, Plaintiff challenges this determination, arguing that Plaintiff's severe migraines—which the ALJ recognized at step two of the sequential evaluation—require additional or more significant limitations than those included in the ALJ's RFC determination. *Plaintiff's Brief*, ECF No. 14, pp. 10–12. Plaintiff's argument is not well taken. The United States Court of Appeals for the Third Circuit has instructed that "no incantations are required at

11

steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019). Because the RFC is the most that a claimant can do despite her limitations, the RFC "'requires a more detailed assessment [of the areas of functional limitation] by itemizing various functions contained in the broad [functional limitation] categories'" and, "unlike the findings at steps two and three, the RFC 'must be expressed in terms of work-related functions[.]'" *Id*. (quoting SSR 96-8P, at *4, 6). "In short, the findings at steps two and three will not necessarily translate to the language used at steps four and five." *Id*.

Moreover, as previously discussed, an ALJ need include only "credibly established" limitations. *Rutherford*, 399 F.3d at 554. Here, the ALJ specifically found that the opinions of Dr. Kundin and Dr. Weiskopf supported the ALJ's RFC determination as follows:

> The residual functional capacity above is based on the opinions of Jack Kundin, M.D., and Richard Weiskopf, M.D., and I give both of these opinions great weight (Exhibit 2A, Exhibit 3A and Exhibit 6F).
>
> Dr. Kundin opined the claimant can perform light work, except she can only perform postural activities occasionally, and she should avoid concentrated exposure to hazards such as machinery and heights (Exhibit 3A and Exhibit 4A). In support of this opinion, he cited the findings of the consultative examination. This opinion is consistent with diagnostic testing of the back and neck that highlight only mild or slight issues (Exhibit 7F, pp.33-34). This opinion is also consistent with the claimant's ability to live alone, prepare simple meals, clean, do laundry, drive, shop in stores and go out alone (Exhibit 3E). Dr. Kundin reviewed the record, and he has program and professional expertise. Based on the above, I give this opinion great weight.
>
> Dr. Weiskopf opined the claimant has no limitation with regard to sitting and standing; a moderate limitation with regard to walking; and a moderate-to-severe limitation with regard to bending, lifting, climbing and carrying (Exhibit 6F, p.5). He added that the claimant has good use of her hands regarding strength and fine motor activities (Exhibit 6F, p.5). This was based on an examination of the claimant that found a normal gait, the ability to rise from a chair without difficulty, full range

12

of motion of the cervical spine, somewhat limited range of motion of the lumbar spine, full strength in the upper and lower extremities, full grip strength bilaterally and intact hand and finger dexterity (Exhibit 6F). This opinion is consistent with diagnostic testing of the back and neck that highlight only mild or slight issues (Exhibit 7F, pp.33-34). It is also consistent with the claimant's ability to live alone and perform her activities of daily living. Dr. Weiskopf examined the claimant, and he has professional expertise. Based on the above, I give this opinion great weight.

R. 21. The ALJ also considered the more restrictive opinion of Kay Callahan, FNP-C, cited by

Plaintiff, but assigned less weight to that opinion than he did to the opinions of the state agency

physician, reasoning as follows:

> I give the opinion of Kay Callahan, FNP-C, less weight (Exhibit 11F). She opined the claimant would be off-task more than thirty percent of the workday (Exhibit 11F, p.2). She stated the claimant can sit two hours in a workday and stand/walk less than two hours in a workday (Exhibit 11F, p.3). She stated the claimant needs to be able to switch between sitting and standing, and she stated the claimant can only occasionally lift/carry less than ten pounds (Exhibit 11F, p.3). She stated the claimant would need unscheduled breaks every thirty minutes and would miss work more than four days per month (Exhibit 11F). Finally, she found limitations with regard to turning the head, performing postural activities, and using the hands (Exhibit 11F, p.4). First, the nurse practitioner does not have the professional expertise of the doctors discussed above. Second, she cited back and neck pain in support of these limitations; however, pain is a symptom. In fact, diagnostic imaging of the back and neck show only mild and slight issues (Exhibit 7F, pp.33-34). Nurse practitioner Callahan's own records recommend thirty minutes of exercise daily (Exhibit 8F). In other words, she was recommending the claimant be more active, not less. Finally, while she did discuss the claimant's headaches, she provided no evidence that they had worsened since the claimant was working full-time. Based on the above, I give this opinion less weight.

R. 22. The ALJ went on to specifically consider Plaintiff's headaches as follows:

> Fourth, with regard to headaches, the claimant underwent an MRI of the brain and an EEG and both tests were normal (Exhibit lF, p.23 and p.27). In addition, the claimant has been reporting headaches for many years (Exhibit 2F). However, she was able to work at the substantial gainful activity level for all of these years, and she has not produced any evidence of worsening. In fact, in 2002, the claimant reported "frequent" migraines (Exhibit 2F, p.5). That year, she earned nearly twenty thousand dollars working full-time (Exhibit 2D, p. l). In 2012, the claimant reported at least one migraine per week (Exhibit 1F). That year, she earned over twenty-three thousand dollars working full-time (Exhibit 2D, p.l).

*Id*. The Court finds no error with the ALJ's evaluations in this regard. *Cf. Williams v. Saul*, No. CV 17-00234, 2019 WL 5061239, at *3 (D.N.J. Oct. 9, 2019) ("Nurses are not 'acceptable medical sources' under the regulations for claims filed before March 27, 2017.") (citations omitted); *Greene v. Comm'r of Soc. Sec.*, No. CIV.A. 14-02998, 2015 WL 3448103, at *6 (D.N.J. May 28, 2015) ("The Court finds that although there are records indicating that Ms. [Nurse] Shepherd examined or treated Plaintiff while at the VA hospital, her opinion was appropriately given less weight than Dr. Gallick and Dr. Giordano's."). Notably, Plaintiff does not challenge the ALJ's consideration of Nurse Callahan's opinion. *See generally Plaintiff's Brief*, ECF No. 14; *see also See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").

Referring to the finding that her migraine headaches last one to two days, Plaintiff also contends that the ALJ erred by finding that Plaintiff's headaches result in only environmental limitations, rather than being off-task or absent from work; in this regard, Plaintiff notes that the vocational expert testified that being off-task 10% of the workday or missing more than one day of work per month would preclude competitive employment. *Plaintiff's Brief*, ECF No. 14, pp. 12–13, 16 (citing R. 19, 55). Plaintiff's argument is not well taken. As a preliminary matter, the ALJ simply noted that Plaintiff told the consultative examiner that her headaches last one to two days. R. 19. For the reasons discussed later in this decision, the ALJ properly found that Plaintiff's subjective statements were not entirely consistent with the record evidence. Moreover, Dr. Weiskopf, the consultative examiner, did not find that Plaintiff's impairments would require her to be off-task or absent from work. R. 21, 428–33. Notably, Plaintiff provides no medical

14

opinion that supports additional or more restrictive limitations than those found by the ALJ. *See generally Plaintiff's Brief*, ECF No. 14. To the extent that the vocational expert testified to limitations such as being off-task or absent from work, the ALJ implicitly rejected these limitations when considering the record evidence, including medical records and medical opinions. R. 20–22. As previously discussed, The ALJ need include only "credibly established" limitations in the RFC. *See Rutherford*, 399 F.3d at 554. Absent any credible evidence that Plaintiff has such limitations, "'it would be error to include limitations not credibly established by the record when relying on a vocational expert's testimony to make a disability determination.'" *Phelps v. Colvin*, No. CV 15-3146, 2017 WL 2290829, at *14 (D.N.J. May 25, 2017) (quoting *Chiucchi v. Comm'r of Soc. Sec.*, No. 15-2460, 2016 U.S. Dist. LEXIS 173259, at *25 n.4, 2016 WL 7322788 (D.N.J. Dec. 15, 2016)); *cf. Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (stating that a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence") (citation omitted); *Harris v. Comm'r of Soc. Sec.*, No. CV 17-3964, 2018 WL 5801546, at *3 (D.N.J. Nov. 5, 2018) ("While the vocational expert testified in response to a hypothetical posed by Plaintiff's counsel—that a person who is occasionally unable to respond appropriately to supervisors would indeed be unemployable—there is no evidence in the record to support Plaintiff's contention that there are times in the day that she would be wholly unable to interact with supervisors in an appropriate manner, or that Plaintiff would engage in frequent or occasional inappropriate conduct in dealing with them."). Accordingly, because the ALJ did not include these limitations in Plaintiff's RFC, the ALJ properly disregarded the vocational expert's testimony regarding these limitations.

Plaintiff goes on to complain that the ALJ, in discussing Plaintiff's migraine headaches, noted that Plaintiff's MRI of the brain and EEG were normal; Plaintiff argues that those test results are not relevant to migraine headaches. *Plaintiff's Brief*, ECF No. 14, pp. 13–14 (citing R. 22). Indeed, the Commissioner concedes that that the absence of positive findings on such tests is not determinative in the diagnosis of headaches. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 15, p. 11. However, the Court agrees with the Commissioner that the ALJ properly considered this diagnostic testing as merely one of the many factors considered by the ALJ in assessing Plaintiff's impairments. The ALJ did not err in this regard.

Plaintiff also contends that the ALJ erred when he failed to acknowledge that Plaintiff "*was terminated from her last two jobs due to excessive absences related to migraine headaches*[.]" *Plaintiff's Brief*, ECF No. 14, p. 15 (emphasis in the original). Plaintiff's argument is not well taken. Although there is evidence that Plaintiff's employment at one job was terminated after seven years, there is also evidence that Plaintiff was then hired at another job where she worked full-time for approximately another eleven years, until 2016. R. 189. Moreover, on the same day on which she was terminated from that job in 2016, Plaintiff reported to Nurse Practitioner Callahan that she was experiencing stress headaches, but that she "feels well" and had "[n]o problems with current medications." R. 330. It is also significant that, when the ALJ asked Plaintiff at the administrative hearing why she could not return to work, Plaintiff responded that it was her back pain–not migraine headaches–that prevented her return to work. R. 43, 47.

Finally, Plaintiff complains about the ALJ erred in finding that Plaintiff had a "good result" from her sinus surgery; Plaintiff contends that, in fact, she developed frontal headaches that were different than her migraine headaches. *Plaintiff's Brief*, ECF No. 14, pp. 15–16. The

Court is not persuaded that this issue requires remand. Without more, the mere existence of sinus headaches does not establish any resulting functional limitations. *Cf. Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) ("A diagnosis alone, however, does not demonstrate disability.") (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *see also Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act"). Plaintiff has not pointed to any evidence that would support additional or greater functional limitations flowing from her sinus headaches. *See generally Plaintiff's Brief*, ECF No. 14. Therefore, even if the ALJ erred in stating that Plaintiff had a good result from her sinus surgery and not specifically considering sinus headaches, any such error is, at most, harmless. *See Shinseki*, 556 U.S. at 409−10; *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

In short, for all these reasons, the Court concludes that the ALJ's RFC determination enjoys substantial support in the record.

### B.      Subjective Complaints

Plaintiff also complains that the ALJ erred in evaluating her subjective complaints. *Plaintiff's Brief*, ECF No. 14, pp. 17−24. "Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec.*, 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)).  Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec.*, 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)).  Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16,

17

2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)). In conducting this evaluation, an ALJ considers objective medical evidence as well as other evidence relevant to a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms).

Finally, "[t]he ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A]

reviewing court typically defers to an ALJ's credibility determination so long as there is a

sufficient basis for the ALJ's decision to discredit a witness.").[2]

Here, the ALJ followed this two-step evaluation process.  The ALJ concluded that

Plaintiff's medically determinable impairments could reasonably be expected to cause some

symptoms, but that Plaintiff's statements "concerning the intensity, persistence and limiting

effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record for the reasons explained in this decision." R. 21. As previously discussed,

the ALJ detailed years of medical evidence and record testimony to support his findings. R. 20–

22. The ALJ specifically considered, *inter alia*, that Plaintiff "is able to live alone, prepare

simple meals, clean, do laundry, drive, shop in stores and go out alone[.]" R. 22. In the view of

this Court, this record provides substantial support for the ALJ's decision to discount Plaintiff's

subjective statements as inconsistent with the record evidence. *Van Horn*, 717 F.2d at 873;

*Miller*, 719 F. App'x at 134; *Izzo*, 186 F. App'x at 286.

However, Plaintiff challenges the ALJ's consideration of her daily activities, arguing that

"the ALJ relied on a highly selective recitation of what she *can sporadically do* with no real

acknowledgment of the limited nature of her activities in assessing the intensity, persistence and

limiting effects of her symptoms." *Plaintiff's Brief*, ECF No. 14, pp. 19–21 (citing, *inter alia*,

*Fargnoli v. Massanari*, 247 F. 3d 34, 40, n. 5 (3d Cir. 2001) (cited for the proposition that,

according to Plaintiff, "sporadic daily activities do not disprove a claim of disability"))

(emphasis in the original). Plaintiff's argument is not well taken. Plaintiff's activities of daily

---

[2]SSR 16-3p superseded SSR 96-7p on March 26, 2016, and eliminated the use of the term
"credibility."  SSR 16-3p.  However, "while SSR 16-3P clarifies that adjudicators should not
make statements about an individual's truthfulness, the overarching task of assessing whether an
individual's statements are consistent with other record evidence remains the same." *Levyash v.
Colvin*, No. CV 16-2189, 2018 WL 1559769, at *8 (D.N.J. Mar. 30, 2018).

living were but one relevant factor that the ALJ properly considered in making his RFC determination and in assessing Plaintiff's subjective complaints. *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity. . . and was permitted to consider them to evaluate the credibility of [the claimant's] subjective complaints of pain and other symptoms.") (citations omitted); 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ may consider a claimant's daily activities). Moreover, this Court is not persuaded that Plaintiff's daily activities were so "sporadic and transitory" as to undermine the ALJ's consideration of such activities. *Cf. Fargnoli*, 247 F.3d at 40 n.5 (finding that a single trip to Europe "cannot be the basis for a finding that he is capable of doing a light exertional job because sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity"). In any event, even if Plaintiff can point to evidence that she believes supports her position, the Court "will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the 'substantial evidence' standard is satisfied." *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012) (citing *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) ("When 'presented with the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 399 (1971)).

Plaintiff also complains that the ALJ did not consider all the factors under 20 C.F.R. § 404.1529(c), and that other evidence, such as her treatment, favors her claim to benefits.

*Plaintiff's Brief*, ECF No. 14, pp. 21−23. Plaintiff's argument is not well taken. As a preliminary

matter, "[t]he fact that the ALJ did not discuss all of the § 404.1529 factors does not warrant

remand, given that his credibility determination was supported by substantial evidence." *Lewis v.*

*Comm'r of Soc. Sec.*, No. CV 15-1587, 2016 WL 4718215, at *7 (D.N.J. Sept. 9, 2016) (noting

that the ALJ discussed the claimant's daily activities, duration of alleged pain, and type of

medication). Moreover, as previously discussed, substantial evidence supports the ALJ's

evaluation of Plaintiff's subjective complaints. Plaintiff complains that the ALJ failed to consider

her medications and other treatment, such as physical therapy; however, the ALJ specifically

stated that he took into account the fact that Plaintiff had not undergone surgical procedures

during the relevant period and that Plaintiff "has generally undergone a very conservative course

of treatment." R. 21. The Court finds no error with the ALJ's evaluation in this regard. *See*

*Phillips v. Barnhart*, 91 F. App'x 775, 782 (3d Cir. 2004) (considering the claimant's

conservative treatment history as a factor that supported the ALJ's determination to discount the

claimant's subjective complaints); *Jimenez v. Colvin*, No. 15-3762, 2016 WL 2742864, at *4

(D.N.J. May 11, 2016) (noting that "the treatment was conservative: medication, including

trigger point injections, and physical therapy"). Moreover, as discussed above, the Court must

affirm the ALJ's decision when it is supported by substantial evidence even if Plaintiff points to

evidence that supports the opposite conclusion. *See Johnson*, 497 F. App'x at 201.

Finally, Plaintiff contends that the ALJ erred in failing "to discuss Plaintiff's stellar work

history, which demonstrates 36 uninterrupted years of earnings prior to her alleged disability

onset, R. 178, a factor that must be considered when assessing her credibility." *Plaintiff's Brief*,

ECF No. 14, p. 22. The Court is not persuaded that this issue requires remand. As a preliminary

matter, the Third Circuit has upheld an ALJ's evaluation of a claimant's subjective complaints

where the ALJ did not "explicitly discuss his years of uninterrupted employment[,]" but where the ALJ did explain why other evidence in the record belied the claimant's subjective complaints. *Sanborn v. Comm'r of Soc. Sec.*, 613 F. App'x 171, 177 (3d Cir. 2015); *see also Gulin v. Comm'r of Soc. Sec.*, No. CIV.A. 13-01897, 2014 WL 1466488, at *14 (D.N.J. Apr. 14, 2014) (finding that "the ALJ properly evaluated Plaintiff's credibility based on the entire record, including the available objective medical evidence" and that the ALJ "did not entirely ignore Plaintiff's work history. While she did not explicitly state that Plaintiff had worked for the NJDOT for twenty-three years, she did note that Plaintiff had worked for the NJDOT and that he took a medical retirement"). Here, the ALJ specifically found that Plaintiff's extensive work history, despite her report of headaches, undermined her claims of disabling pain. R. 22 (finding that "she was able to work at the substantial gainful activity level for all of these years").

For all these reasons, the Court concludes that the ALJ sufficiently explained his reasoning in assessing Plaintiff's subjective complaints, and the ALJ's findings in this regard are supported by substantial evidence in the record. The ALJ's findings are therefore entitled to this Court's deference. *See* SSR 16-3p; *Miller*, 719 F. App'x at 134; *cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 765 (3d Cir. 2009) ("Credibility determinations as to a claimant's testimony regarding pain and other subjective complaints are for the ALJ to make.") (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983)); *Davis v. Comm'r Soc. Sec.*, 105 F. App'x 319, 322 (3d Cir. 2004) (finding that the ALJ sufficiently evaluated the plaintiff's testimony where "the ALJ devoted two pages to a discussion of claimant's subjective complaints and cited Claimant's daily activities and objective medical reports"). Accordingly, the ALJ's assessment of Plaintiff's subjective complaints cannot serve as a basis for remand of this action. *Id.*

VI.     **CONCLUSION**

For these reasons, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42

U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  June 15, 2021                              *s/Norah McCann King*
                                                  NORAH McCANN KING
                                                  UNITED STATES MAGISTRATE JUDGE